# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROBERTO HERNANDEZ | : | CIVIL ACTION |
|     Plaintiff | : | |
| | : | 3:07-CV-00121(MRK) |
| V. | : | |
| | : | NOVEMBER 15, 2007 |
| | : | |
| WILLIAM H. CARBONE, EXECUTIVE | : | |
| DIRECTOR COURT SUPPORT | : | |
| SERVICES DIVISION, in his individual and | : | |
| official capacity; CITY OF HARTFORD; | : | |
| PATRICK HARNETT, FORMER CHIEF | : | |
| OF POLICE, in his individual and official | : | |
| capacity; OFFICER MARK DIBATTISTA, in his | : | |
| individual and official capacity; OFFICER | : | |
| GENA LIAPPES, in her individual and official | : | |
| capacity; DETECTIVE JOHN KOCH, in his | : | |
| individual and official capacity; OFFICER BRIAN | : | |
| BISHOP, in his individual and official capacity | : | |
| Defendants | : | |

## AMENDED COMPLAINT

1.  The Plaintiff, ROBERTO HERNANDEZ, brings this civil action, for violations of his rights secured and protected by the Civil Rights Act of 1871, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the rights secured by the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, and for rights secured under Article One §§ 7, 8, 9 and 20 of the Connecticut Constitution, and under the laws of the State of Connecticut, for which he seeks compensatory and punitive damages, declaratory and injunctive relief, attorney fees and cost, and alleges the following:

- 1 -

## PRELIMINARY STATEMENT

2.      The Plaintiff alleges that on January 29, 2005, the Defendant police officers LIAPPES
and KOCH entered and searched the Plaintiff's apartment without a search warrant, or
his consent.  The Plaintiff further alleges that on February 7, 2005, the Defendant police
officers DIBATTISTA and BISHOP arrested the Plaintiff without probable cause and
initiated criminal charges against the Plaintiff.  The plaintiff seeks monetary damages
against the above named Defendant police officers.

3.      The Plaintiff contends the CITY OF HARTFORD and its Chief of Police at the time,
PATRICK HARNETT, are liable for the violations of the Plaintiff's rights under federal
and state laws because, with deliberate indifference, they: (1) tolerated, condoned, and
encouraged a pattern of false arrest and malicious prosecution; (2) failed to adequately
monitor and investigate such incidents and/or supervise and discipline the officers
involved, (3) failed to adequately train and provide guidelines for effectuating an arrest
and initiating charges based on probable cause and (4) created an atmosphere and culture
in which police officers do not have to show probable cause before arresting a person and
where malicious treatment of citizens is tolerated.  The Plaintiff seeks monetary damages
against the above named Defendants.

4.      The Plaintiff, who is indigent, and a Hispanic male, further contends after being arrested
his bail was unreasonably set at $100,000. Because the Plaintiff lacked the means to
secure bail, he was incarcerated for approximately one year as a pre-trial detainee.  On

- 2 -

the eve of trial, all charges against the Plaintiff were dropped. The Plaintiff alleges the State of Connecticut's bail system, as set forth under C.G.S. § 54-63a, et seq., and Conn. Practice Bk. § 38-1, et seq., is unconstitutional both on its face and as applied to the Plaintiff, under the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution, and under Article One § 20 of the Connecticut Constitution, for two reasons: (1) it intentionally treats racial minorities accused of a crime, such as the Plaintiff, differently than non-minorities accused of the same crime, and (2) it deprives indigent members of society, such as the Plaintiff, of their fundamental constitutional rights to non-excessive bail, to be free of punishment before conviction, and to be presumed innocent before conviction.  In addition, it is unconstitutional both on its face and as applied to the Plaintiff, under the Due Process Clauses of the Fourteenth Amendment of the United States Constitution, and under Article One § 8 of the Connecticut Constitution. The Plaintiff seeks declaratory and injunctive relief against the Defendant WILLIAM CARBONE, Executive Director of the Court Support Services Division (CSSD), in his official capacity, and monetary damages against the Defendant in his individual capacity.

5.    Statutory notice of the Plaintiff's civil rights claims against the Defendant police officers, and intention to bring this action, was given to the CITY OF HARTFORD, pursuant to §§ 7-101a and 465 of the Connecticut General Statutes, on March 6, 2006 (a copy of which notice is annexed hereto).

## JURISDICTION

6.    Jurisdiction is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367 to vindicate the Plaintiff's rights under 42 U.S.C. § 1983 as well as the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

7.    The basis for the declaratory and injunctive relief sought by the Plaintiff is predicated upon 28 U.S.C. §§ 2201 and 2202.

8.    Venue is proper, under 28 U.S.C. § 1391(b), in this District as the claims asserted herein arose in this District.

## PARTIES

9.    The Plaintiff, ROBERTO HERNANDEZ, is an Hispanic male, indigent, and resident of the State of Connecticut.

10.    The Defendant WILLIAM H. CARBONE is the Executive Director of the COURT SUPPORT SERVICES DIVISION (CSSD), an agency of the State of Connecticut responsible, pursuant to C.G.S. § 54-63b, for policies and procedures relating to the administration of the bail system within the State, and is sued in his official and individual capacity; as the head of the CSSD, CARBONE is responsible for policies and procedures relating to the administration of the bail system and has the obligation to investigate, and take any proper action concerning any matter involving the enforcement of bail laws and the protection of the State's citizens and residents against unlawful policy and procedures relating to the administration of the State's bail system.

- 4 -

11.     The Defendant, CITY OF HARTFORD, is a municipality created and existing as a political subdivision of the State of Connecticut pursuant to the laws of the State of Connecticut.

12.     At the time of the incident described herein, the Defendant PATRICK HARNETT was the chief of police for the CITY OF HARTFORD, and its final policymaker in the area of law enforcement, and is sued individually and in his official capacity as Chief of Police of the CITY OF HARTFORD, and was acting in his official capacity in the performance of his duties, and within the scope of his employment, as Chief of Police, and was acting under color of state law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the United States and of the State of Connecticut.

13.     At all relevant times, the Defendants OFFICER GENA LIAPPES, OFFICER MARK DIBATTISTA, DETECTIVE JOHN KOCH, and OFFICER BISHOP (collectively referred hereinafter as "Defendant police officers") were employees of the CITY OF HARTFORD, and each is sued in his or her official and individual capacities, and each were acting in his or her capacity as a police officer for the CITY OF HARTFORD and within the scope of his or her employment, and under the color of state law, that is, under color of the Constitution, statutes, laws, charter, ordinances, rules, regulations, customs and usages of the United States and of the State of Connecticut.

14.     At all relevant times, the above named Defendant police officers acted jointly and in concert with each other and each Defendant had the duty and the opportunity to protect the Plaintiff from the negligent, reckless, willful, knowing and purposeful acts of the other Defendants, but each Defendant failed and refused to perform such duty, thereby proximately causing the injuries and losses complained of herein.

## STATEMENT OF FACTS

**A.**     **The Illegal Search and Seizure**

15.     On or about January 26, 2005, the McDonald's at 172 Washington Street in Hartford, Connecticut was robbed (hereinafter "the McDonalds").

16.     Defendant police officers LIAPPES, DIBATTISTA and KOCH were assigned by the Hartford Police Department to investigate the McDonald's robbery.

17.     One eyewitness to the McDonald's robbery was Maribel Rodriguez, who, at the time, was involved in a relationship with the Plaintiff as his girlfriend.

18.     On or about January 27, 2005, Defendant KOCH interviewed Ms. Rodriguez as part of the McDonalds robbery investigation.

19.     During the interview, Ms. Rodriguez stated she could not identity the robber and she had never seen the robber before.

20.     On or about January 28, 2005, the Plaintiff and Ms. Rodriguez had an argument and the Plaintiff ended his relationship with Ms. Rodriguez and asked her to leave his apartment.

21.    Ms. Rodriguez became enraged at being asked to leave the Plaintiff's apartment and threatened revenge against him.

22.    Soon thereafter, Ms. Rodriguez went to the McDonald's on Washington Street and handed the cashier a note, which stated the person who robbed the McDonald's was named "Robert" and that he resides at 194 Washington Street (the address of the Plaintiff's apartment at the time).

23.    On or about January 29, 2005, at approximately 12:00 a.m., based on the note delivered by Ms. Rodriguez, Defendants LIAPPES and KOCH arrived at the Plaintiff's apartment at 194 Washington Street.

24.    The Defendants LIAPPES and KOCH entered the Plaintiff's bedroom apartment without a warrant, or the Plaintiff's consent, where the Plaintiff was asleep in his bed.

25.    The Defendants LIAPPES and KOCH awoke the Plaintiff and claimed to have a warrant to enter the apartment, even though no warrant was produced.

26.    The Defendants LIAPPES and KOCH interrogated the Plaintiff in his bedroom and searched his apartment for evidence.

27.    Later that day, on or about January 29, 2005, the Defendants LIAPPES and KOCH presented a photo array, which included a photograph of the Plaintiff, to the cashier who was robbed at the McDonald's.

28.    The cashier did not identify the Plaintiff's photograph as the robber, but picked the photograph of Alberto Arroyo as the person that most resembled the robber.

29.     The Defendant police officers did not investigate Mr. Arroyo as a possible suspect for the robbery.

30.     On or about February 2, 2005, Ms. Rodriguez contacted the Hartford Police Department and told Defendant KOCH that the Plaintiff had committed the McDonald's robbery.

31.     Defendant KOCH knew, or should have known, that Ms. Rodriguez previously stated she did not know the identity of the robber, and that Ms. Rodriguez was the Plaintiff's former girlfriend and held a grudge against the Plaintiff because their relationship ended badly.

32.     On or about February 2, 2005, the Plaintiff was taken into custody by one or more of the Defendant police officers for drinking in public and brought to the police station on Jennings Road for questioning.

33.     Once inside the station at Jennings Road, one or more of the Defendant police officers told the Plaintiff they had a surveillance video of the McDonald's robbery that showed the Plaintiff as the robber.

34.     The Plaintiff adamantly denied any involvement in the robbery and had no knowledge of the incident on the surveillance tape.

35.     One or more of the Defendant police officers told the Plaintiff that Ms. Rodriguez had given a statement that the Plaintiff had robbed the McDonald's.

36.     The Plaintiff offered the Defendant police officers an alibi for the date and time he was alleged to be robbing the McDonalds; however, the Defendant police officers failed to investigate this alibi so as to confirm or debunk it.

37.     The Defendant police officers then charged the Plaintiff was drinking in public and released him on a promise to appear.

38.     On or about February 7, 2005, the Defendant police officers received a phone call from a "concerned citizen" stating only that "the person responsible for robbing the McDonald's is inside the Salvation Army on Washington Street."

39.     The Defendants DIBATTISTA and BISHOP arrived at the Salvation Army on Washington street and spotted the Plaintiff inside.

40.     The Defendant police officers then proceeded to arrest the Plaintiff for First Degree Robbery, under Conn. Gen. Stats. § 53a-134(a)(4), for the McDonald's robbery on anuary 26, 2006.

41.     Despite the absence of any exigent circumstances, the Defendant police officers did not apply for, or obtain, an arrest warrant prior to arresting the Plaintiff for First Degree Robbery.

42.     The Plaintiff was arrested for robbery despite the Defendant police officers knowledge of the following exculpatory information at the time of arrest:

    (A)     An eyewitness to the robbery described the robber as "five feet, two inches tall, weighing approximately 150 pounds" while the Plaintiff stands at five feet six inches tall and weighs 177 pounds;

    (B)     The cashier who was the victim of the robbery did not identify the Plaintiff in a photo array given on January 29, 2005, but, rather, identified another person as the most likely match;

    (C)      No physical evidence existed that linked the Plaintiff to the robbery;

(D)    The only person who had identified the Plaintiff as the robber was the Plaintiff's ex-girlfriend, who originally stated she had no knowledge of the robber's identity and then changed her story after her relationship with the Plaintiff ended badly;

(E)    The surveillance video from the robbery did not show the Plaintiff as the robber;

(F)    The February 7, 2005 tip from a "concerned citizen" claiming that the Plaintiff robbed the McDonalds lacked any indicia of tipster's knowledge regarding the robbery, or reliability as a source;

(G)    Ms. Rodriguez's story about how the Plaintiff robbed the McDonald's differed significantly from other eyewitness accounts of the robbery.

As a result of the actions and omissions of the Defendant police officers, as described above, the Plaintiff suffered injuries, some of which may be permanent, including, but not limited to, depression, emotional distress, psychological pain and suffering, anguish, anxiety, damage to reputation and character, loss of dignity, and the damage inflicted upon him has caused a substantial loss of his enjoyment of life's activities.

**B.**    <u>**Connecticut's Unconstitutional Bail System**</u>

43.    After his arrest, under the State of Connecticut's bail laws, and upon the recommendation of the bail commissioner, under the policies and customs of the CSSD, as set forth by the Defendant WILLIAM CARBONE, as the Executive Director of the CSSD, the Plaintiff's bail was set at $100,000.00.

44.     The Plaintiff, who is indigent, was unable to make the $100,000 bail and a reasonable assessment of the Plaintiff's financial means and resources would have revealed that the Plaintiff would be unable to secure pre-trial release upon such bail.

45.     The de jure and/or de facto polices and procedures promulgated by WILLIAM H. CARBONE, as Executive Director of the CSSD, did not properly consider the Plaintiff's status as an indigent in determining the amount of bail necessary to secure his appearance in court, or other non-monetary avenues of release.

46.     The Defendant WILLIAM H. CARBONE, as Executive Director of CSSD, did not promulgate guidelines, polices or procedures to be followed by bail commissioners, or police officers to take into consideration a defendant's status as an indigent in determining the amount of bail necessary to secure his appearance in court, or whether non-monetary conditions for release are appropriate.

47.     Further, the Plaintiff's bail was set an amount far beyond his financial means based on his status as racial minority.

48.     The de jure and/or de facto polices and procedures promulgated by WILLIAM H. CARBONE, as Executive Director of the CSSD, set bail for defendants of racial minorities, such as the Plaintiff, at levels beyond the defendant's financial means, and at a higher rate than non-minorities accused of the same or similar crimes and with the same or similar financial resources.

49.     The Defendant WILLIAM H. CARBONE, as Executive Director of CSSD, did not promulgate guidelines, polices or procedures to be followed by bail commissioners, or police officers that precludes a defendant's minority status to be considered in determining the amount of bail necessary to secure his appearance in court, and as a result, the Plaintiff's bail was set at an unreasonably high amount.

50.     The State of Connecticut's statutory scheme for determining a pre-trial release (hereinafter "the bail laws)", under C.G.S. § 54-63a, *et seq*., and Conn. Practice Book § 38-1, *et seq*., discriminated against the Plaintiff based on his status as both an indigent member of society and has a racial minority.

51.     The bail laws, under C.G.S. § 54-63a, *et seq*., and Conn. Practice Book § 38-1, *et seq*., do not preclude conditioning an indigent defendant's pre-trial release on financial conditions, and do not require pre-trial release to be set by non-monetary means, thereby causing a financial condition in the amount of $100,000.00 to be set for the Plaintiff's pre-trial release.

52.     Further, the bail laws, under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., require an automatic hearing and/or review of the bail decision without motion of the criminal defendant on a regular basis; and require an evidentiary hearing where the evidentiary burden is one of clear and convincing evidence.

53.     As a result of the CSSD policies and customs, or lack thereof, set forth by WILLIAM CARBONE, as Executive Director of CSSD, and the bail laws, under C.G.S. § 54-63a, *et seq.*, and Conn. Practice Book § 38-1, *et seq.*, the Plaintiff  bail was set at an amount beyond his financial means and as a result he was incarcerated as a pre-trial detainee for approximately one year.

54.     On the eve of trial, on February 3, 2006, all charges against the Plaintiff were dismissed and the Plaintiff was released from incarceration.

55.     As a result of the actions and omissions of the Defendant WILLIAM CARBONE, as Executive Director of the CSSD, as described above, the Plaintiff was denied his liberty for approximately one year, suffered injuries, some of which may be permanent, including, but not limited to, depression, emotional distress, psychological pain and suffering, anguish, anxiety, damage to reputation and character, loss of dignity, and the damage inflicted upon him has caused a substantial loss of his enjoyment of life's activities.


**COUNT ONE, (Violation of Rights Secured by 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution for Illegal Search and Seizure Against Defendants Gena and Koch.)**

56.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

57.     The conduct and the actions of the Defendants, OFFICER GENA LIAPPES, and DETECTIVE KOCH acting under the color of law, in entering and searching the

Plaintiff's bedroom on January 29, 2005 at 12:00 a.m., absent a valid warrant, and without the Plaintiff's consent, violated the Plaintiff's Fourth Amendment rights, was done intentionally, maliciously, and/or with reckless disregard for the natural and probable consequences of their acts and was designed to and did cause the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character in violation of the Plaintiff's rights guaranteed under the Fourth Amendment to the United States Constitution.

**COUNT TWO: (Violation of Rights Secured by 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution for False Arrest Against Defendants DiBattista and Bishop)**

58.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

59.    The conduct and the actions of the Defendants OFFICER MARK DIBATTISTA, and OFFICER BISHOP, acting under the color of law, in falsely arresting the Plaintiff for First Degree Robbery, absent an arrest warrant or probable cause, or without verifying suspicion, was done intentionally, maliciously, and/or with reckless disregard for the natural and probable consequences of their acts, and was designed to, and did, cause the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character in violation of the Plaintiff's rights guaranteed under the Fourth Amendment to the United States Constitution.

60.     All of the above named Defendants are liable for falsely arresting the Plaintiff because they either actively participated in the false arrest or were in a position to intervene to stop the false arrest but failed to intervene.

**COUNT THREE: (Violation of Rights Secured by 42 U.S.C. § 1983 and the Fourth Amendment of the United States Constitution for Malicious Prosecution Against Defendants DuBattista and Bishop.)**

61.      The Plaintiff incorporates all of the above allegations as if fully set forth herein.

62.     The Conduct of the Defendants MARK DIBATTISTA and OFFICER BISHOP, acting under the color of law, in maliciously prosecuting the Plaintiff was done without probable cause, and was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character in violation of the Plaintiff's rights guaranteed under the Fourth Amendment to the United States Constitution.

63.     All of the above named Defendants are liable for maliciously Prosecuting the Plaintiff because each Defendant either actively participated in the violation or was in a position to intervene to stop the violation of the Plaintiff's rights but failed to intervene.

**COUNT FOUR: (Violation of Rights Secured by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution for Abuse of Process Against Defendants Liappes, DiBattista, Koch and Bishop.)**

64.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

65.     The Conduct of the Defendants, OFFICER GENA LIAPPES, OFFICER MARK DIBATTISTA, DETECTIVE KOCH, and OFFICER BISHOP, acting under the color of law, constituted an abuse of process, in violation of the Plaintiff's Fourth and Fourteenth Amendment rights, because charges were brought against the Plaintiff for the improper purpose of covering up the Defendant police officers' poor police investigation into the McDonald's robbery, and was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character in violation of the Plaintiff's rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

66.     All of the above named Defendants are liable for abuse of process because each Defendant either actively participated in the violation or was in a position to intervene to stop the violation of the Plaintiff's rights but failed to intervene.

**COUNT FIVE: (Violation of Rights Secured By 42 U.S.C. § 1983 for Conspiring to Violate the Plaintiff's Fourth Amendment Rights Against Defendants Liappes, DiBattista, Koch and Bishop.)**

67.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

68.     The Defendants, OFFICER GENA LIAPPES, OFFICER MARK DIBATTISTA, DETECTIVE KOCH, OFFICER BISHOP acting under the color of law, conspired to violate the Plaintiff's Fourth Amendment rights under the federal Constitution, said conspiracy lead to the Plaintiff actually being deprived of his Fourth Amendment rights, was designed to, and did, cause the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character in violation of the Plaintiff's rights guaranteed under the Fourth Amendment to the United States Constitution.

69.     All of the above named Defendants are liable for conspiring to deprive the Plaintiff of his Fourth Amendment rights because each Defendant either actively participated in the conspiracy or was in a position to intervene to stop the conspiracy but failed to intervene.

**COUNT SIX: (Violation of Rights Secured By 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendment to the United States Constitution Due to Policy and Custom Against Defendants City of Hartford and Harnett.)**

70.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

71.     At all times relevant to this Complaint, the Defendant CITY OF HARTFORD, acting through its Chief of Police PATRICK J. HARNETT, the final policymaker for the CITY OF HARTFORD in the area of law enforcement, had in effect de facto policies,

- 17 -

practices, and customs exhibiting deliberate indifference to the constitutional rights of citizens and residents of Hartford and were a direct and proximate cause of the unconstitutional conduct of the Defendants OFFICER GENA LIAPPES, OFFICER MARK DIBATTISTA, DETECTIVE KOCH, and OFFICER BISHOP.

72. These de facto polices, practices, and custom include, *inter alia*: (a) the failure to properly screen, supervise, discipline, transfer, counsel, and/or otherwise control police officers engaged in the unlawful arrests, and those officers that effectuate an arrest without probable cause, particularly those police officers who are repeatedly accused of such acts; (b) the failure to properly train, provide guidelines and supervise police officers in conducting a search or seizure based on probable cause; (c) the police code of silence wherein police officers regularly cover-up police unlawful conduct, *inter alia*, in sworn testimony, official reports, and in public statements, all of which are designed to cover for and or falsely exonerate the accused police officers.

73. These de facto policies, practices, and customs of THE CITY OF HARTFORD and PATRICK J. HARNETT amount to a deliberate indifference to the safety and lives of the citizens and residents of Hartford.

74. The Defendants CITY OF HARTFORD and PATRICK J. HARNETT failed to properly investigate the Plaintiff's claim of misconduct, and other similar claims of misconduct brought by other citizens and residents.  The Defendants' failure to investigate amounts

to deliberate indifference to the safety and rights of such persons under the laws of the United States Constitution.

75.     As a direct and proximate result of the Defendants' CITY OF HARTFORD and PATRICK J. HARNETT wrongful polices, practices, and customs complained of herein, the Plaintiff was deprived of his liberty, suffered severe emotional and psychological distress and injuries, was subject to great humiliation, embarrassment, degradation and shame and was otherwise damaged and injured.

**COUNT SEVEN: (Violation of Rights Secured By Article I §§ 7, 8 and 9 of the Constitution of the State of Connecticut Aganst Defendants Liappes, DiBattista, Koch and Bishop.)**

76.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

77.     The acts and omissions of the Defendants, OFFICER GENA LIAPPES, OFFICER MARK DIBATTISTA, DETECTIVE KOCH, and OFFICER BISHOP, as herein described, deprived the Plaintiff of his liberty without due process of law, in violation of the Plaintiff's rights under Article I, § 8 of the Connecticut Constitution.

78.     The acts and omissions of the above named Defendants, as herein described, deprived the Plaintiff of his rights to be free of unreasonable and unlawful detentions,  arrests, searches and seizures in violation of Article I, §§ 7 and 9 of the Connecticut Constitution.

**COUNT EIGHT: (Liability for Reckless or Negligent Conduct Under the Common Law of Connecticut Against Defendants Liappes, DiBattista, Koch and Bishop.)**

79.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

80.    Defendants, OFFICER GENA LIAPPES, OFFICER MARK DIBATTISTA, DETECTIVE KOCH and OFFICER BISHOP acted with recklessness or negligence in one or more of the following ways:

(A)    Defendant police officer failed and/or refused to determine whether probable cause existed to arrest the Plaintiff for First Degree Robbery;

(B)    Defendant police officers failed to obtain an arrest warrant before arresting the Plaintiff for First Degree Robbery;

(C)    Defendant police officers failed to obtain a search warrant before searching the Plaintiff's apartment on January 29, 2005;

(D)    Defendant police officers failed and/or refused to properly investigate the situation before arresting the Plaintiff;

(E)    Defendant police officers failed to investigate other suspects for the robbery;

(F)    Defendant police officers failed to act with the skill of a reasonable police officer in investigating the McDonald's robbery;

(G)    Each Defendant failed to intervene to stop the other police officers civil right violations perpetrated against the Plaintiff;

(H)    The Defendant police officers failed to protect the Plaintiff against arrest without probable cause and malicious prosecution;

(I)    The Defendants ignored exculpatory evidence relating to the Plaintiff.

**COUNT NINE:   (Liability for Intentional Infliction of Emotional Distress Under the Common Law of Connecticut Against Defendants Liappes, DiBattista, Koch and Bishop.)**

81.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

82.    The aforementioned actions of the Defendants, OFFICER GENA LIAPPES, OFFICER

MARK DIBATTISTA, DETECTIVE KOCH, OFFICER BISHOP, intentional, willful and deliberate and caused the Plaintiff to suffer from severe emotional distress, that the above named Defendants should have foreseen, would have resulted from their actions.

83.  Said conduct was extreme and outrageous.

84.  The Defendants' conduct was the sole cause of the Plaintiff's distress.

85.  The emotional distress sustained by the Plaintiff was severe.

86.  Said conduct of the Defendants' reveals a reckless indifference towards the rights of others and demonstrates an intentional and wanton violation of these rights.

**COUNT TEN: (Liability for City of Hartford Under Under C.G.S. § 52-557n)**

87.  The Plaintiff incorporates all of the above allegations as if fully set forth herein.

88.  The negligent conduct of the Defendant police officers, as described above, occurred while the Defendants were on duty and in uniform, and during the course and scope of their duties and functions as police officers for the CITY OF HARTFORD.

89.  The Defendant police officers conduct, as described above, occurred while acting as agents and employees for the CITY OF HARTFORD, and in an interest in furthering the interests of the CITY OF HARTFORD.

90.  The Defendant police officers' negligent conduct subjected the Plaintiff, an identifiable victim, to imminent harm.

91.  The CITY OF HARTFORD is liable under C.G.S. § 52-557n for the negligent acts of the Defendant police officers committed during within the scope of their employment and

which subjected the Plaintiff to imminent harm.

**COUNT ELEVEN**: **(Liability for False Imprisonment Under the Common Law of Connecticut Against Defendants DiBattista and Bishop.)**

92.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

93.     The conduct and actions of the Defendants, OFFICER MARK DIBATTISTA and OFFICER BISHOP, in falsely imprisoning the Plaintiff absent probable cause, was done intentionally, maliciously, with deliberate indifference and/or reckless disregard for the natural and probable consequences of their acts, was done without lawful justification or reason, and was designed to and did cause specific and serious bodily, mental pain and anguish, humiliation, and embarrassment in violation of the Plaintiff's rights as guaranteed under Connecticut common law.

**COUNT TWELVE:** **(Liability for Malicious Prosecution Under the Common Law of Connecticut Against Defendants DiBattista and Bishop.)**

93.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

94.     The Conduct of the Defendants MARK DIBATTISTA and OFFICER BISHOP, in maliciously prosecuting the Plaintiff was done without probable cause, and was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character.

**COUNT THIRTEEN: (Liability Under Connecticut Common Law for Abuse of Process Against Defendants Liappes, DiBattista, Koch and Bishop. )**

95.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

96.    The conduct of the Defendants, OFFICER GENA LIAPPES, OFFICER MARK DIBATTISTA, DETECTIVE KOCH, and OFFICER BISHOP constituted an abuse of process because charges were brought against the Plaintiff for the improper purpose of covering up the Defendant police officers' poor police investigation into the McDonald's robbery, and was done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequences of their acts, was done without lawful justification, and was designed to and did cause the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character in violation of the Plaintiff's rights guaranteed under the common law of Connecticut.

**COUNT FOURTEEN: (Indemnification Under Conn. Gen. Stats. § 7-465.)**

97.    The Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 52, of Count One, as if fully set forth herein.

98.    Defendant CITY OF HARTFORD is legally liable to pay on behalf of the Defendant police officers all sums which each Defendant becomes obligated to pay by reason of the imposed upon such employee by law for damages awarded for the infringement of the civil rights and physical damages to the person or property of the Plaintiff as a result of the events complained of herein pursuant to Conn. Gen. Stat. § 7-465.

**COUNT FIFTEEN: (Violation of Rights Secured by 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution for Unreasonable Bail Against Defendant Mark DiBattista.)**

99.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

100.    The conduct of the Defendant MARK DIBATTISTA, acting under the color of law, violated the Plaintiff's Eighth Amendment right to reasonable bail by drafting, and submitting, an incident report regarding the Plaintiff's arrest for the McDonald's robbery, that omitted exonerating and exculpatory information.

101.    The Defendant MARK DIBATTISTA knew, or should have known, that his incident report would be a significant factor in determining the amount of the Plaintiff's bail.

102.    As a result of the Defendant's, MARK DIBATTISTA, incident report, the Plaintiff's bail was set at $100,000.00, an amount excessively high to assure the Plaintiff's appearance in court, and the Plaintiff remained incarcerated as a pre-trial detainee for approximately one year, was denied his liberty, and caused the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character in violation of the Plaintiff's rights guaranteed under Eighth Amendment to the United States Constitution.

**COUNT SIXTEEN: (Violation of Rights Secured  Article 1, Section 8 of the Constitution of the State of Connecticut for Unreasonable Bail Against Defendant Mark DiBattista.)**

103.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

104.    As a result of the Defendant's, MARK DIBATTISTA, incident report, the Plaintiff's bail was set at $100,000.00, an amount excessively high to assure the Plaintiff's appearance in court, and the Plaintiff remained incarcerated as a pre-trial detainee for approximately one year, was denied his right to reasonable bail under Article 1, Section 8 of the Constitution of the State of Connecticut, and caused the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character.

**COUNT SEVENTEEN: (Violation of Rights Secured by 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution for Unreasonable Bail Against Defendant William Carbone, In His Individual Capacity.)**

105.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

106.    As a result of the Defendant WILLIAM CARBONE'S, as Executive Director of CSSD, polices and customs, or failure to promulgate proper polices and customs, relating to the reasonable determination of bail for indigent defendants, the Plaintiff's bail was set at $100,000.00, an amount excessively high to assure the Plaintiff's appearance in court, and the Plaintiff remained incarcerated as a pre-trial detainee for approximately one year, was denied his liberty, and caused the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and

character in violation of the Plaintiff's rights guaranteed under Eighth Amendment to the United States Constitution.

**COUNT EIGHTEEN: (Violation of Rights Secured  Article 1, Section 8 of the Constitution of the State of Connecticut for Unreasonable Bail Against Defendant William Carbon, In His Individual Capacity.)**

107.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

108.    As a result of the Defendant WILLIAM CARBONE'S, as Executive Director of CSSD, polices and customs, or failure to promulgate proper polices and customs, relating to the reasonable determination of bail for indigent defendants, the Plaintiff's bail was set at $100,000.00, an amount excessively high to assure the Plaintiff's appearance in court, and the Plaintiff remained incarcerated as a pre-trial detainee for approximately one year, was denied his liberty, and caused the Plaintiff severe emotional and psychological distress, anguish, anxiety and injury, pain and suffering, and damage to reputation and character in violation of the Plaintiff's rights guaranteed under Article 1 Section 8 of the Connecticut Constitution.

**COUNT NINETEEN: (Violation of Rights Secured by 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution for Violation of the Plaintiff's Equal Protection Rights Against Defendant William Carbone, In His Individual Capacity, for Indigent Discrimination as Applied to the Plaintiff.)**

109.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

110.    The Defendant WILLIAM H. CARBONE, Executive Director of CSSD, denied the

Plaintiff his constitutional rights under the Fourteenth Amendment of the United States Constitution to equal protection of the laws, in that the Defendant's supervision and direction of the Connecticut bail system promulgated de jure and/or de facto policies and procedures, or failed to promulgate polices or procedures, that proximately caused the Plaintiff's equal protection rights to be violated solely based on the Plaintiff's status as an indigent member of society thereby causing the Plaintiff to be denied his fundamental rights to non-excessive bail, to not be punished before conviction, and right to presumption of innocence.

111.    The Defendant had actual or constructive knowledge that CSSD, bail commissioners and/or police officers were engaged in the practice of determining indigent defendants' bail, such as the Plaintiff, at excessively high monetary amounts, so that the indigent defendant has no reasonable opportunity to secure pre-trial release.

112.    Despite the Defendant's knowledge of the above practice, he was deliberately indifferent to the de facto and/or de jure policies and procedures of setting bail at unreasonably high monetary amounts for indigent persons accused of a crime, such as the Plaintiff.

113.    The de facto and/or de jure policies and customs set forth and/or condoned by the Defendant was a proximate cause of the Plaintiff's bail being set at $100,000.00.

114.    As a direct and proximate result of the Defendant's wrongful polices, practices, and customs complained of herein, the Plaintiff was deprived of his liberty for approximately one year; his fundamental constitutional rights to non-excessive bail, not to be punished

before conviction, and presumption of innocence were denied; suffered severe emotional and psychological distress and injuries; was subject to great humiliation; embarrassment; degradation and shame and was otherwise damaged and injured.

**COUNT TWENTY: (Violation of Rights Secured by Article 1, Section 20 of the Constitution of the State of Connecticut for Violation of the Plaintiff's Equal Protection Rights Against Defendant William Carbone, In His Individual Capacity, for Indigent Discrimination as Applied to the Plaintiff.)**

115.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

116.    The Defendant WILLIAM H. CARBONE, Executive Director of CSSD, denied the Plaintiff his constitutional rights under Article 1, Section 20 of the Connecticut Constitution to equal protection of the laws, in that the Defendant's supervision and direction of the Connecticut bail system promulgated de jure and/or de facto policies and procedures, or failed to promulgate polices or procedures, that proximately caused the Plaintiff's equal protection rights to be violated solely based on the Plaintiff's status as an indigent member of society thereby causing the Plaintiff to be denied his fundamental rights to non-excessive bail, to not be punished before conviction, and right to presumption of innocence.

117.    As a direct and proximate result of the Defendant WILLIAM CARBONE'S wrongful polices, practices, and customs complained of herein, the Plaintiff was deprived of his liberty for approximately one year; his fundamental constitutional rights to non-excessive bail, not to be punished before conviction, and presumption of innocence were denied; suffered severe emotional and psychological distress and injuries; was subject to great humiliation; embarrassment; degradation and shame and was otherwise damaged and injured.

**COUNT TWENTY-ONE: (Violation of Rights Secured by 42 U.S.C. § 1985 and the Fourteenth Amendment of the United States Constitution for Violation of the Plaintiff's Equal Protection Rights Against William Carbone, In His Indivdual Capacity, For Racial Discrimination as Applied to the Plaintiff.)**

118.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

119.    The Defendant WILLIAM H. CARBONE, Executive Director of the CSSD, denied the Plaintiff his constitutional rights under the Fourteenth Amendment of the United States Constitution to equal protection of the laws, in that the Defendant's supervision and direction of the Connecticut bail system promulgated de jure and/or de facto policies and procedures that proximately caused the Plaintiff to be denied reasonable bail because of the Plaintiff's status as a racial minority.

120.    The Connecticut bail system is administered in a manner that intentionally sets bail for racial minorities accused of a crime, such as the Plaintiff, at an amount greater than the amount of bail set for non-minorities accused of the same or similar crimes.

121.    The difference in the amount of bail set for racial minorities accused of a crime and non-

minorities accused of the same or similar crime is grossly disproportionate and constitutes invidious discrimination and racial animus.

122.    The Defendant had actual or constructive knowledge that CSSD  and its agents were engaged in conduct that set the amount of bail for racial minorities accused of a crime, such as the Plaintiff, at amounts grossly disproportionate to the amount of bail set for non-minorities accused of the same or similar crimes.

123.    Despite the Defendant's knowledge of the above, he was deliberately indifferent to the de facto and/or de jure policies and procedures that led to racial minorities, such as the Plaintiff, to suffer a disproportionally higher rate of pretrial incarceration as compared to non-racial minorities.

124.    The de facto policies set forth and/or condoned by the Defendant was a proximate cause of the Plaintiff's bail being set at $100,000.00.

125.    As a direct and proximate result of the Defendant's wrongful polices, practices, and customs complained of herein, the Plaintiff was deprived of his liberty, suffered severe emotional and psychological distress and injuries, was subject to great humiliation, embarrassment, degradation and shame and was otherwise damaged and injured.

**COUNT TWENTY-TWO**: **(Violation of Rights Secured by Article 1, Section 20 of the Constitution of the State of Connecticut for Violation of the Plaintiff's Equal Protection Rights Against Defendant William Carbone, In His Individual Capacity, for Racial Discrimination as Applied to the Plaintiff.)**

126.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

127.    The Defendant WILLIAM H. CARBONE, Executive Director of the CSSD, denied the

Plaintiff his constitutional rights under Article 1, Section 20 of the Connecticut Constitution to equal protection of the laws, in that the Defendant's supervision and direction of the Connecticut bail system promulgated de jure and/or de facto policies and procedures that proximately caused the Plaintiff to be denied reasonable bail because of the Plaintiff's status as a racial minority.

128.   As a direct and proximate result of the Defendant's wrongful polices, practices, and customs complained of herein, the Plaintiff was deprived of his liberty, suffered severe emotional and psychological distress and injuries, was subject to great humiliation, embarrassment, degradation and shame and was otherwise damaged and injured.

**COUNT TWENTY-THREE: (Facial Challenge to the State of Connecticut's Bail System, Under the Equal Protection Clause of the Fourteenth Amendment of the Federal Constitution, Against Defendant William Carbone, In His Official Capacity, as Executive Director of CSSD, for Depriving Indigent Members of Society, Such as the Plaintiff, Their Fundamental Rights.)**

129.   The Plaintiff incorporates all of the above allegations as if fully set forth herein.

130.   The State of Connecticut's bail laws, under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., deprived the Plaintiff's of his Fourteenth Amendment rights to equal protection of the laws under the United States Constitution, because the aforementioned bail laws do not preclude conditioning an indigent defendant's pre-trial release on financial conditions, and does not require pre-trial release to be set by non-monetary means.

131.    As a direct result of the bail laws, under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., a financial condition to the Plaintiff's pre-trial release was set, despite the Plaintiff's indigent status.

132.    By not precluding the determination of financial conditions to an indigent defendant's pre-trial release and not requiring non-monetary conditions of pre-trial release, the bail laws, under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., deprived the Plaintiff of his fundamental constitutional rights to non-excessive bail, not to be punished before conviction, and presumption of innocence solely because of the Plaintiff's indigent status.

133.    Under the bail system as set forth under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., all indigent defendants are denied the above fundamental rights, solely because of their indigent status, each time bail is conditioned on financial terms and non-monetary conditions.

134.    The Plaintiff seeks a Court order and injunction against WILLIAM CARBONE, in his official capacity as Executive Director of the CSSD,  that the State of Connecticut's bail system, as set forth under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., violates the Equal Protection Clause of the Fourteenth Amendment because it deprives indigent members of society of their fundamental rights solely because of their indigence, and an injunctive order compelling the Defendant to bring Connecticut's bail system in compliance with the Equal Protection Clause of the United States Constitution.

**COUNT TWENTY-FOUR:** (Facial Challenge to the State of Connecticut's Bail System, Under the Equal Protection Clause of the Connecticut Constitution, Against Defendant William Carbone, In His Official Capacity, as Executive Director of CSSD, for Depriving Indigent Members of Society, Such as the Plaintiff, Their Fundamental Rights.)

135.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

136.    The State of Connecticut's bail laws, under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., deprived the Plaintiff's of his Article 1, Section 20 rights to equal protection of the laws under the Connecticut Constitution, because the aforementioned bail laws do not preclude conditioning an indigent defendant's pre-trial release on financial conditions, and does not require pre-trial release to be set by non-monetary means.

137.    The Plaintiff seeks Court order and injunction against WILLIAM CARBONE, in his official capacity as Executive Director of the CSSD, that the State of Connecticut's bail system, as set forth under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., violates the Equal Protection Clause of the Connecticut Constitution because it deprives indigent members of society of their fundamental rights solely because of their indigence, and an injunctive order compelling the Defendant to bring Connecticut's bail system in compliance with the Equal Protection Clause of the Connecticut Constitution.

**COUNT TWENTY-FIVE:** (Facial Challenge to the State of Connecticut's Bail System, Under the Due Process Clause of the Fourteenth Amendment of the Federal Constitution, Against Defendant William Carbone, In His Official Capacity, as Executive Director of CSSD)

138.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

- 33 -

139.    The State of Connecticut's bail laws, under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., deprived the Plaintiff's of his Fourteenth Amendment rights to due process of law because the bail laws do not bear the proper nexus to any valid governmental interest.

140.    The Plaintiff seeks Court order and injunction against WILLIAM CARBONE, in his official capacity as Executive Director of the CSSD, that the State of Connecticut's bail system, as set forth under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., violates the Due Process Clause of the Federal Constitution because the bail laws do not bear the proper nexus to any valid governmental interest.

**COUNT TWENTY-SIX: (Facial Challenge to the State of Connecticut's Bail System, Under the Due Process Clause of the Connecticut Constitution, Against Defendant William Carbone, In His Official Capacity, as Executive Director of CSSD)**

141.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

142.    The State of Connecticut's bail laws, under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., deprived the Plaintiff's of his Article One § 8 rights to due process of law because the bail laws do not bear the proper nexus to any valid governmental interest.

143.     The Plaintiff seeks Court order and injunction against WILLIAM CARBONE, in his official capacity as Executive Director of the CSSD, that the State of Connecticut's bail system, as set forth under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., violates the Due Process Clause of the Connecticut Constitution because the bail laws do not bear the proper nexus to any valid governmental interest.

**COUNT TWENTY-SEVEN: (As Applied Challenge to the State of Connecticut's Bail System, Under the Due Process Clause of the Fourteenth Amendment of the Federal Constitution, Against Defendant William Carbone, In His Official Capacity, as Executive Director of CSSD)**

144.     The Plaintiff incorporates all of the above allegations as if fully set forth herein.

145.     The State of Connecticut's bail laws, under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., deprived the Plaintiff's of his Fourteenth Amendment rights to due process of law because an automatic hearing and/or review of the bail decision without motion of the criminal defendant was never done, let alone on a regular basis; and an evidentiary hearing where the evidentiary burden is one of clear and convincing evidence was never held.

146.     The Plaintiff seeks Court order and injunction against WILLIAM CARBONE, in his official capacity as Executive Director of the CSSD, that the State of Connecticut's bail system, as set forth under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., violates the Due Process Clause of the Federal Constitution because the bail laws do not bear the proper nexus to any valid governmental interest.

**COUNT TWENTY-EIGHT: (As Applied Challenge to the State of Connecticut's Bail System, Under the Due Process Clause of the Connecticut Constitution, Against Defendant William Carbone, In His Official Capacity, as Executive Director of CSSD)**

147.    The Plaintiff incorporates all of the above allegations as if fully set forth herein.

142.    The State of Connecticut's bail laws, under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., deprived the Plaintiff's of his Article One § 8 rights to due process of law because an automatic hearing and/or review of the bail decision without motion of the criminal defendant was never done, let alone on a regular basis; and an evidentiary hearing where the evidentiary burden is one of clear and convincing evidence was never held..

149.    The Plaintiff seeks Court order and injunction against WILLIAM CARBONE, in his official capacity as Executive Director of the CSSD, that the State of Connecticut's bail system, as set forth under C.G.S. § 54-63a, et seq., and Conn. Practice Book § 38-1, et seq., violates the Due Process Clause of the Connecticut Constitution because the bail laws do not bear the proper nexus to any valid governmental interest.

WHEREFORE, the Plaintiff demands:

1.      A trial by jury on all counts.

2.      Compensatory damages, jointly and severally, against all Defendants named in their individual capacity and the CITY OF HARTFORD;

3.      Punitive damages, jointly and severally, against all individual Defendants named in their individual capacity;

4.      A court order, under 42 U.S.C. § 1988, that the Plaintiffs are entitled the costs involved in maintaining this action and attorney's fees for Counts brought under 42 U.S.C. § 1983;

5.      Declaratory and injunctive relief as to Counts Twenty-Three though Twenty-Six; and/or

6.      Such other relief in law or equity as the Court may deem just and proper.


**THE PLAINTIFF**


/s/ A. Paul Spinella
A. Paul Spinella, Esq.
Spinella & Associates
One Lewis Street
Hartford, CT 06103
860.728.4900 (Tel)
860.728.4909 (Fax)
attorneys@spinella-law.com
Federal Bar: ct00078

## CERTIFICATION

I hereby certify that on November 15, 2007, a copy of foregoing Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent out by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

**THE PLAINTIFF**

/s/ A. Paul Spinella
A. Paul Spinella, Esq.
Spinella & Associates
One Lewis Street
Hartford, CT 06103
860.728.4900 (Tel)
860.728.4909 (Fax)
attorneys@spinella-law.com
Federal Bar: ct00078