ROBERTO HERNANDEZ,     :
            :
    Plaintiff,     :
            :
v.           :   No. 3:07CV00121 (MRK)
            :
WILLIAM H. CARBONE, et al.   :
            :
    Defendants.    :

## MEMORANDUM OF DECISION

   In this action, Plaintiff Roberto Hernandez sues Defendant William H. Carbone, Executive Director of Connecticut's Court Support Services Division, the City of Hartford, and various members of Hartford's Police Department for alleged federal and state constitutional violations arising from his arrest and detention in 2005. Mr. Hernandez was arrested for participation in an alleged robbery. The charges were later dropped because Mr. Hernandez was not, in fact, the robber. However, he was detained for nearly a year before the charges were dropped, due to the fact that his bail was set at $100,000 and he was unable to post bail because he was indigent. Mr. Hernandez has included no less than twenty-nine counts in his Amended Complaint [doc. # 43], twelve of which are asserted against Mr. Carbone, who now moves to dismiss all claims against him.[1] *See* Motion to Dismiss [doc. # 60].

   Though his twelve claims against Mr. Carbone are superficially distinct, Mr. Hernandez's core complaint is that Connecticut's bail system is unconstitutional under the federal and state constitutions because indigent defendants are required to post money bail in order to be released pretrial. These individuals, all of whom are presumed to be innocent of the charges against them,

---

[1] The claims against the Hartford Defendants are proceeding on a different track and are not at issue in this decision.

are detained in jail pretrial, because, as a consequence of their indigency, they cannot post any cash bond or procure a surety bond. As noted, in Mr. Hernandez's case, he was detained for approximately a year even though he was, in fact, innocent of the charges against him. He also asserts – though admittedly only in conclusory terms and without alleging any evidence based on statistics or actual comparators – that Connecticut's bail system is administered in a manner that intentionally sets bail for minorities accused of crimes at amounts that are greater than for non-minorities.

As is apparent from even this brief recitation, the issues Mr. Hernandez raises are important to the administration of justice in the State of Connecticut. They are issues that deserve the attention of both the judicial and policy branches of government. Nonetheless, Mr. Carbone contends that Mr. Hernandez has brought his claims against the wrong person and in the wrong forum and that some of his claims are improperly asserted. The Court agrees. Therefore, the Court dismisses all counts against Mr. Carbone, but without prejudice to Mr. Hernandez's right to bring his claims in the right forum against the right defendants.

## I. Statutory Scheme

Connecticut's bail system is established by statute. *See* Conn. Gen. Stat. § 54-63a *et seq.*; *see also* Conn. Practice Book § 38-1 *et seq.* Under this system, the arresting law enforcement officer makes the initial determination of the terms and conditions of an arrested individual's release from custody. *See* Conn. Gen. Stat. § 54-63c; Conn. Practice Book § 38-2. If an arrested individual cannot meet the conditions set by the police, a bail commissioner is required to promptly interview the individual to establish the terms and conditions of the individual's release prior to arraignment in court. Conn. Gen. Stat. §§ 54-63b(a)(1) & (b), 54-63c; 54-63d(a); *see also* Conn. Practice Book

§§ 38-2; 38-3.  The attorney for the arrested person may be present at the interview with the bail commissioner.  *See* Conn. Practice Book § 3-6;  *Clynch v. Chapman*, 285 F. Supp. 2d 213, 220 n.8 (D. Conn. 2003).  The interview is designed to gather information concerning the arrested person, his or her family, community ties, prior criminal record, and physical and mental condition.  *See* Conn. Gen. Stat. §54-63b(a)(1);  *see also* Conn. Practice Book § 54-63b(b).

The bail commissioner then sets the terms for the individual's release prior to arraignment and is statutorily required to promptly order the release of the individual "on the first of the following conditions of release found sufficient to provide reasonable assurance" of the person's appearance in court:

> (1) Upon the execution of a written promise to appear without special conditions; (2) upon the execution of a written promise to appear with any of the nonfinancial conditions as specified in subsection (c) of this section; (3) upon the execution of a bond without surety *in no greater amount than necessary*; or (4) upon the execution of a bond with surety *in no greater amount than necessary*.

Conn. Gen. Stat. § 54-63d(a) (emphasis added).  If the person is unable to meet the conditions of release ordered by the bail commissioner, the bail commissioner must inform the court.  The statute authorizes the bail commissioner to impose nonfinancial conditions in addition to, or in conjunction with, the above-mentioned conditions.  These nonfinancial conditions may require the  individual to do any of the following:

> (1) Remain under the supervision of a designated person or organization; (2) comply with specified restrictions on the person's travel, association or place of abode; (3) not engage in specified activities, including the use or possession of a dangerous weapon, an intoxicant or controlled substance; (4) participate in the zero-tolerance drug supervision program established under section 53a-39d; (5) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; or (6) satisfy any other condition that is reasonably necessary

to assure the appearance of the person in court.

Conn. Gen. Stat. § 54-63d(c).

The Court Support Services Division ("CSSD") of the State of Connecticut's Judicial Branch – of which Mr. Carbone is Executive Director – includes the Office of Bail Commissioner. *See* Conn. Gen. Stat. § 51-1d. The statute directs CSSD to establish "written uniform weighted release criteria based upon the premise that the least restrictive condition or conditions of release necessary to insure the appearance in court of the defendant is the pretrial release alternative of choice." Conn. Gen. Stat. § 54-63b(c). The CSSD criteria are required to be based upon, but not limited to, the following:

> The nature and circumstances of the offense insofar as they are relevant to the risk of nonappearance; (2) the defendant's record of previous convictions; (3) the defendant's past record of appearance in court after being admitted to bail; (4) the defendant's family ties; (5) the defendant's employment record; (6) the defendant's financial resources, character and mental condition; and (7) the defendant's community ties.

*Id.*

The provisions of any bond set by a police officer or a bail commissioner may be modified by the court at any time. *See* Conn. Gen. Stat. § 54-69b; *see also* Conn. Practice Book § 38-13. Moreover, by statute, the conditions for release imposed by a bail commissioner or police officer are effective *only* until the appearance of the arrested person in court. *See* Conn. Gen. Stat. § 54-63d(c). From the time of arraignment forward, only a Connecticut Superior Court judge can enter an order establishing the conditions for pretrial release, although the bail commissioner, the prosecutor, and the defense attorney can make recommendations to the court. *See* Conn. Gen. Stat. §§ 54-64a, 54-63d(c); *see also* Conn. Practice Book § 38-4.

Except for certain offenses described below, when any arrested person comes before the Superior Court, the statute directs the court, in bailable offenses, to promptly order the release of the individual "upon the first of the following conditions of release found sufficient to reasonably assure the appearance of the arrested person" in court:

> (A) Upon his execution of a written promise to appear without special conditions, (B) upon his execution of a written promise to appear with nonfinancial conditions, (C) upon his execution of a bond without surety *in no greater amount than necessary*, (D) upon his execution of a bond with surety *in no greater amount than necessary*.

Conn. Gen. Stat. § 54-64a (emphasis added); *see also* Conn. Practice Book § 38-4. In determining the conditions of release, the court is directed to consider the nature and circumstances of the offense, the individual's record of previous convictions and past record of appearance in court after being admitted to bail, the individual's family and community ties, employment record, financial resources, character and mental condition. *See id.*

However, when an arrested individual is charged with more serious offenses – such as a class A felony, a class B felony (with certain exceptions), a class C felony (with certain exceptions), or a family violence crime – the court is directed, in bailable offenses, to promptly order the release of the person upon the first of the previously-noted conditions of release found sufficient to reasonably assure the appearance of the arrested person in court *and* "that the safety of any other person will not be endangered." Conn. Gen. Stat. § 54-64a(b)(1). In addition to considering the criteria listed above, courts in these more serious cases are also directed to consider the number and seriousness of charges pending against the individual, the weight of the evidence against him or her, the arrested person's history of violence, whether he or she has previously been convicted of similar offenses

while released on bond, and the likelihood based upon the expressed intention of the individual that he or she will commit another crime while released. *See* Conn. Gen. Stat. § 54-64a(b)(2).

The statute also provides that if the court decides to impose nonfinancial conditions of release, the court should state on the record its reasons for doing so and should subject the individual to the "least restrictive condition or combination of conditions that the court determines will reasonably assure the presence of the individual in court and [with respect to the more serious offenses noted above] the safety of any other person will not be endangered." Conn. Gen. Stat. § 54-64a(2)(c). Those nonfinancial conditions may include an order that the arrested individual do one or more of the following:

> (1) Remain under the supervision of a designated person or organization; (2) comply with specified restrictions on such person's travel, association or place of abode; (3) not engage in specified activities, including the use or possession of a dangerous weapon, an intoxicant or a controlled substance; (4) participate in the zero-tolerance drug supervision program established under section 53a-39d; (5) provide sureties of the peace pursuant to section 54-56f under supervision of a designated bail commissioner; (6) avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; (7) maintain employment or, if unemployed, actively seek employment; (8) maintain or commence an educational program; (9) be subject to electronic monitoring; or (10) satisfy any other condition that is reasonably necessary to assure the appearance of the person in court and that the safety of any other person will not be endangered.

*Id.*

Whenever any accused person believes that the amount or security for a bond is excessive, he or she may bring an application to the court in which the prosecution is pending or to any Superior Court judge alleging that the bond is excessive. *See* Conn. Gen. Stat. § 54-69; *see also* Conn. Practice Book § 38-14. After giving notice and a hearing, at which the individual may be represented by counsel, the court is directed by statute "to continue, modify or set conditions of release" consistent with the previously-mentioned requirements. Conn. Gen. Stat. § 54-69. Any

person aggrieved by the court's order concerning release or the bond, may petition the Connecticut Appellate Court for an expedited review of that order. *See* Conn. Gen. Stat. § 54-63g. By statute, such a petition is required to take precedence over any other matter before the Appellate Court. *See id.*

## II.   Mr. Hernandez's Arrest and Detention

According to the Amended Complaint [doc. # 43], on February 7, 2005, Hartford police arrested Mr. Hernandez for first degree robbery of a McDonald's restaurant in late January 2005. Even though the cashier at the McDonald's did not identify Mr. Hernandez as the robber from a photo array and the surveillance camera at the McDonald's did not show Mr. Hernandez as the robber, police arrested Mr. Hernandez on the basis of a tip from his estranged girlfriend, who told police that he had committed the robbery even though she had originally denied knowing the identify of the robber.   At the time, Mr. Hernandez was indigent and living at a Salvation Army shelter.

The next day, on February 8, 2005, Mr. Hernandez, represented by a public defender, appeared before a Superior Court judge for arraignment.[2]  A bail commissioner was also present at the arraignment.  She reported that Mr. Hernandez was a life-long resident of Hartford and recounted

---

[2]  At argument, counsel for Mr. Hernandez and Mr. Carbone agreed that the Court could review the transcripts of the bail hearings without converting the motion to dismiss into a summary judgment motion.  The Court agrees.  The Amended Complaint refers to the bail hearings and thus incorporates the transcripts by reference. *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565 (2d Cir. 2006); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). Furthermore, the Court can take judicial notice of state court proceedings. *See, e.g.*, *Global Network Commc'n Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (stating that courts may take into account public records on motion to dismiss); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (same); *Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (stating that courts may look at complaints filed in state court in deciding motion to dismiss).

his criminal record, which included some assaults. There was also an outstanding warrant for him from the State of Florida for a violation of probation. Supplemental Filing in Support of Defendant Carbone's Motion to Dismiss [doc. # 90], Ex. 1 (Feb. 8, 2005 Transcript) at 1-2. The bail commissioner informed the judge that Mr. Hernandez had "no means of support." *Id.* at 1. When asked by the judge for her recommendation for bail, she recommended $25,000. However, the prosecutor asked that bail be set at $150,000, stating that the crime was a class B felony and that "[i]t's a pretty strong case for the state." *Id.* at 2. Mr. Hernandez's counsel asked the court to adopt the bail commissioner's recommendation of a $25,000 bond because of his ties to the community and because Mr. Hernandez contended that they had arrested the wrong person. *See id.* Mr. Hernandez's counsel also informed the court that "I don't believe he can post any bond." *Id.* at 3. After listening to the recommendations, the court stated that "[b]ond is set in the amount of $100,000 cash or surety." The court gave no explanation for its decision and there was no discussion of any nonfinancial alternatives. Mr. Hernandez's counsel asked that the bond be set "without prejudice," to which the prosecutor responded, "They're all set without prejudice, counsel." Unable to post a $100,000 bond, Mr. Hernandez remained detained pending trial.

On April 6, 2005, Mr. Hernandez appeared, with counsel, before another Superior Court judge for the purpose of seeking a reduction in his bond "to as low as the Court would deem appropriate." Supplemental Filing in Supp. of Def. Carbone's Mot. to Dismiss [doc. # 90], Ex. 2 (Apr. 6, 2005 Transcript) at 1. There is no indication from the transcript that the bail commissioner appeared at this hearing and Mr. Hernandez's counsel did not argue otherwise at oral argument. Defense counsel recounted Mr. Hernandez's work history, his ties to the community and to his family and stated that he would live with his mother if released. Though acknowledging that Mr.

Hernandez had a record of some arrests, counsel stated that Mr. Hernandez had now been in jail longer than he had ever been before. Counsel also discussed the charge against Mr. Hernandez and the weakness of the identification. The prosecutor opposed any reduction in the bond. After hearing the parties, the court stated as follows:

> I'm going to deny the reduction without prejudice so you can renew it because I'd like to know more about this down the road. Here it seems to me, and it's a very important factor that [defense counsel] brings up, that the purported victim, the person that was at the register I assume, didn't identify this gentleman. It appears to me, and we can renew it at a later time, that the person who allegedly did come forward has a greater – is greater reliability. And that could be a guess on my part. Because apparently she knows the person and apparently knew this was going to happen and didn't want to really get involved initially and just passed a note. That's my assessment now. If that's in error, you can renew the motion at a later time. Right now, the motion for bond reduction is denied . . . [w]ithout prejudice.

*Id.* at 8. Once again, there was no discussion of nonfinancial alternatives to a bond.

According to his counsel at oral argument, Mr. Hernandez did not renew his motion to reduce his bond and did not exercise his right to take an immediate expedited appeal to the Appellate Court. As a consequence, Mr. Hernandez remained in detention because he was unable to post the $100,000 bail. On February 3, 2006, on the eve of trial and after having spent approximately a year in jail, the State dropped all charges against Mr. Hernandez and he was released. According to Mr. Hernandez, the actual perpetrator of the robbery was never apprehended. This lawsuit followed in 2007.

### III.    Claims Against Mr. Carbone

Mr. Hernandez has sued Mr. Carbone under 42 U.S.C. § 1983 for violations of the Eighth Amendment excessive bail provision[3] and the Fourteenth Amendment due process and equal

---

[3] The Eighth Amendment of the U.S. Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const.

protection guarantees. He also asks this Court to exercise supplemental jurisdiction over his claims that Mr. Carbone violated the Connecticut Constitution, Article One, §§ 8 and 20.[4] For purposes of discussion, it makes most sense to group these claims as follows: § 1983 "as applied" constitutional claims seeking monetary and injunctive relief against Mr. Carbone in his individual and official capacities; § 1983 facial challenges to Connecticut's bail system; and state constitutional claims.

## A. As Applied Federal Constitutional Claims

Mr. Hernandez seeks to impose liability on Mr. Carbone for violations of Mr. Hernandez's constitutional rights in the setting of his bail based on the following allegations of the Amended Complaint.[5] According to Mr. Hernandez, CSSD, under the direction of Mr. Carbone, has adopted policies, customs and procedures to ensure that a defendant's status as an indigent is not taken into account in determining the amount of bail necessary to secure his appearance in court. As it developed at oral argument, Mr. Hernandez believes that it is unconstitutional *ever* to require cash bail or surety bond for an indigent defendant, and he seeks to impose liability on Mr. Carbone for allowing the bail commissioners under his supervisory control to recommend money bail or surety

_____

amend. VIII.

[4] Although the Amended Complaint also purports to make claims "under the laws of the State of Connecticut," Amended Compl. [doc. # 43], ¶ 1, none of the counts mentions state statutory claims or gives any indication as to which state laws in particular Mr. Hernandez believes Mr. Carbone has violated. Therefore, the Court does not consider any state statutory claims.

[5] Mr. Carbone moved to dismiss Mr. Hernandez's original complaint. *See* Motion to Dismiss [doc. # 18]. At Mr. Hernandez's request, the Court gave him an opportunity to amend the complaint to address Mr. Carbone's arguments and denied the motion to dismiss without prejudice to renewal. *See* Order [doc. # 36].

bonds when a defendant is indigent. He also sues Mr. Carbone for allegedly failing to adopt policies that would encourage the use of non-financial alternatives for indigent defendants. *See* Amended Compl. [doc. # 43], ¶¶ 45-46. In addition, Mr. Hernandez contends that Mr. Carbone has adopted policies that allow bail to be set for minorities at levels that are higher than for non-minorities who are charged with the same class of crimes and who have similar financial resources. *See id.* ¶¶ 47-48. Mr. Hernandez charges that "as a result of the CSSD policies and customs," his bail was set at an amount beyond his financial means and, thus, he was incarcerated pretrial for approximately one year. *See id.* ¶ 53. Mr. Hernandez seeks both a monetary award and an injunction against Mr. Carbone relating to the setting of Mr. Hernandez's bail.

## 1.        Claims for Monetary Relief.

Mr. Carbone makes a number of arguments in response to Mr. Hernandez's claims for monetary relief against Mr. Carbone in his individual capacity, including asserting that he is protected by absolute and qualified immunity, that he was not personally involved in setting Mr. Hernandez's bail and did not cause any harm that flowed to Mr. Hernandez, and that Mr. Hernandez's federal constitutional claims are meritless.

As Mr. Hernandez acknowledges, judges and bail officers ordinarily are absolutely immune from monetary claims arising from the setting of a particular defendant's bail. *Walczyk v. Rio*, 496 F.3d 139, 164 (2d Cir. 2007); *Root v. Liston*, 444 F.3d 127, 132 (2d Cir. 2006); *Minney v. Kradas*, No. 3:01cv1543(EBB), 2004 WL 725330, at *4 (D. Conn. Mar. 31, 2004); *Clynch v. Chapman*, 285 F. Supp. 2d at 221-22. However, Mr. Hernandez seeks to impose liability on Mr. Carbone for his administrative, not judicial, acts in adopting policies and customs that influence the setting of bail

for indigents, and accordingly he argues that Mr. Carbone is not entitled to absolute immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (officials acting in an administrative capacity enjoy only qualified immunity); *Lombardi v. Whitman*, 485 F.3d 73, 78 (2d Cir. 2007).

In response to Mr. Carbone's argument that he was not personally involved in the setting of Mr. Hernandez's bail, Mr. Hernandez claims that Mr. Carbone is nonetheless liable under § 1983 because he "created a custom or policy fostering the violation" of his constitutional rights, "allowed the custom or policy to continue after learning of it," or "was grossly negligent in supervising subordinates who cause the violation." *Warheit v. City of New York*, No. 06-4463-pr, 2008 WL 904777, at *2 (2d Cir. Apr. 3, 2008); *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). In other words, Mr. Hernandez argues that he does not need to show that Mr. Carbone personally set the bail in order to establish liability under § 1983.

Mr. Hernandez might well be able to overcome the absolute immunity and personal involvement defenses asserted by Mr. Carbone, issues that this Court need not, and does not, decide. But there is a more fundamental problem with Mr. Hernandez's monetary claim against Mr. Carbone – "[a] public official is liable under § 1983 only if he *caused* the plaintiff to be subjected to a deprivation of his constitutional rights." *Galen v. County of Los Angeles*, 477 F.3d 652, 665 (9th Cir. 2007) (citing *Baker v. McCollan*, 443 U.S. 137, 142 (1979)); *see also Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1071 (2d Cir. 1996), reinstated after opinion vacated, 173 F.3d 120, 121 (2d Cir. 1999) ("The Supreme Court has made it crystal clear that principles of causation borrowed from tort law are relevant to civil rights actions brought under section 1983."). It is absolutely clear from the transcripts of the bail hearings that any alleged misconduct by Mr. Carbone in adopting unconstitutional policies and practices did not cause Mr. Hernandez's bail to be set at

$100,000 or cause him to be detained for approximately one year for failure to post that bail. For it was the judge who set Mr. Hernandez's bail. And the judge not only ignored the bail commissioner's recommendation for a much lower bail (in an amount that was also requested by Mr. Hernandez's counsel) but he also ignored the bail commissioner's statement that Mr. Hernandez could not post any bail. Furthermore, when Mr. Hernandez sought a reduction in his bail at a hearing at which the bail commissioner was not even present, the judge declined to reduce Mr. Hernandez's $100,000 bail. In the circumstances of this case, therefore, any chain of causation between Mr. Carbone's allegedly unconstitutional policies and Mr. Hernandez's alleged harm is broken as a matter of law.

Recently, the Second Circuit sought to clarify when the chain of causation is broken in cases in which a subsequent decision-maker sits between a defendant's actions and the ultimate constitutional violation. *See Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007). In *Higazy*, the court explained that the "chain of causation need not be considered broken if [the defendant] deceived the subsequent decision maker, or could reasonably foresee that his misconduct [would] contribute to an independent decision . . . ." *Id.* at 177 (quotation marks omitted). In that case, the defendant was detained on a material witness warrant because of the results of a polygraph test which was apparently administered under circumstances of duress and coercion. The Second Circuit pointed out that

> [a]t the January 11, 2002 bail hearing before Judge Maas, there were several factors that could have militated in Higazy's favor: there were at least twenty local people who vouched for him and said that they would allow him to reside in their homes; Higazy had no criminal record; and Higazy was willing to accept supervisory conditions such as wearing an ankle bracelet and any other monitoring device that the Court might deem necessary.

13

*Id.* at 178. Yet, the court denied Higazy bail on the basis of the polygraph test. The Second Circuit held that it could not, as a matter of law, find that the defendant, who had administered the polygraph test, was not the proximate cause of Higazy's injury because he should have reasonably foreseen that his misconduct could influence the judge and cause Higazy to be detained. *See id.* at 177; *see also Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("Even if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision."); *Malley v. Briggs*, 475 U.S. 335, 345 (1986) (holding that the issuance of a warrant does not break the chain of causation between the application for a warrant and an illegal arrest); *Warner*, 115 F.3d at 1071 (holding that the decision of a sentencing judge does not break the causal chain between the wrongful recommendation of a probation officer and an unconstitutional sentence).

Here, however, it is clear that the judge *did not* rely on the bail commissioner's recommendation. *See Wray v. City of New York*, 490 F.3d 189, 193 (2d Cir. 2007) (holding that a police officer was not liable under § 1983 because the violation of plaintiff's constitutional rights "was caused by the ill-considered acts and decisions of the prosecutor and trial judge"). Nor did the bail commissioner deceive or mislead the Superior Court judge; to the contrary, she properly informed the judge that Mr. Hernandez had no assets and could not post any bail. And she recommended a much lower bail, an amount to which defense counsel consented. Yet, the court imposed a bond four times greater than the amount recommended by the bail commissioner. Mr. Hernandez argues that the bail commissioner acted unconstitutionally by recommending monetary

bail in any amount after determining that Mr. Hernandez was indigent. Yet, even if Mr. Hernandez

is correct, it does not change the fact that the Superior Court judge had all of the information with

which to make an independent decision and by all indications made that decision with very little

consideration of the bail commissioner's recommendation.

Moreover, at a hearing about two months later at which the bail commissioner was not

present, another Superior Court judge again confirmed the $100,000 bail, knowing that the Mr.

Hernandez could not post such a bond. In short, Mr. Carbone may well have adopted

unconstitutional policies regarding bail – a matter which the Court assumes but does not decide –

but it is apparent from the undisputed record of the bail proceedings that those policies had nothing

whatsoever to do with the setting of Mr. Hernandez's bail or his detention.

Mr. Hernandez leans heavily on the First Circuit's decision in *Wagenmman v. Adams*, 829

F.2d 196 (1st Cir. 1987), but that case is easily distinguished from this case. There, the First Circuit

held that a police officer who "help[ed] to shape, and exercis[ed] significant influence over, the bail

decision" could be held liable under § 1983 even though he did not actually set the plaintiff's bail.

*Id.* at 212. The court reasoned that "if a person wrongfully brings about an end by manipulating

another, the naked fact that he lacked supervisory power to accomplish the end by himself does not

provide an impenetrable shield. The law looks to causation in fact, not to the arrangement of links

in some decorative daisy chain." *Id.* at 211.

By contrast, in this case it is apparent from the court record that the bail commissioner

(presumably acting under Mr. Carbone's control and supervision) did not manipulate anyone and did

not bring about the setting of bail at $100,000. That was the result of the independent judgment of

the Superior Court. Therefore, as a matter of law, there is a break in the chain of causation between Mr. Carbone's allegedly unconstitutional policies and Mr. Hernandez's injury. *See Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999); *Wray*, 490 F.3d at 189. Accordingly, the Court dismisses Mr. Hernandez's monetary claims against Mr. Carbone in his individual capacity.

### 2. Mr. Hernandez's Request for Injunctive Relief.

Mr. Hernandez also seeks injunctive relief against Mr. Carbone on the "as applied" constitutional claims. The problem for Mr. Hernandez is that he no longer is detained. Therefore, any injunctive relief for Mr. Hernandez on his "as applied" constitutional claims is moot.

Mr. Hernandez essentially acknowledges that he is not personally suffering any ongoing injury,[6] but claims the Court should consider his request for injunctive relief on the basis of the "capable of repetition, yet evading review" exception to mootness. *See Lillbask* ex rel. *Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 84-85 (2d Cir. 2005). The Supreme Court has explained that the "capable-of-repetition doctrine applies only in exceptional situations where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same

---

[6] Mr. Hernandez does argue that he continues to suffer an injury from alleged "collateral consequences," namely that CSSD continues to maintain records pertaining to the setting of his bail and his detention. He cites a District of Oregon case, *Mayfield v. United States*, 504 F. Supp. 2d 1023 (D. Or. 2007), which held that because law enforcement officials were still in possession of documents that they obtained during an illegal search, the plaintiff was threatened with an ongoing injury and thus his claim for injunctive relief was not moot. *Mayfield* is readily distinguishable from the case at hand. In that case, the ongoing injury arose not because of the maintenance of the records *per se*, but because law enforcement officials presumably could have utilized the documents in a subsequent criminal investigation to the detriment of the plaintiff. Here, Mr. Hernandez has not established how the maintenance of records pertaining to the setting of his bail and his detention could create the potential for any ongoing injury.

complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998); *accord Lillbask*, 397 F.3d at 84-85; *Bd. of Educ. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002).

Here, Mr. Hernandez cannot establish that either condition is present. First, there is no indication that he is likely to be arrested or detained again. Second, there has been no showing that the duration of any detention is likely to be too short to be fully litigated. In fact, as the Court noted previously, Connecticut law gives defendants the right to a prompt hearing on conditions for release and an expedited appeal to the Connecticut Appellate court to review any decision of the Superior Court. Mr. Hernandez has made no showing that these procedural provisions are inadequate to allow a defendant, let alone Mr. Hernandez, to raise the constitutional claims he has asserted in this case. Indeed, the Court notes, Mr. Hernandez did not avail himself of the expedited appeal that Connecticut law provided him. In these circumstances, Mr. Hernandez's claim for injunctive relief on his "as applied" challenges is moot.

Accordingly, the Court dismisses Mr. Hernandez's "as applied" constitutional claims against Mr. Carbone for monetary and injunctive relief.

## B.    Facial Constitutional Challenges

Mr. Hernandez also attacks Connecticut's bail system on its face as contrary to the Fourteenth Amendment. The gist of Mr. Hernandez's facial constitutional claim is that Connecticut's bail system violates the Constitution because it gives judges the discretion to impose money bail or a surety bond even when a defendant is indigent and cannot possibly post bail or a bond; the system therefore dooms indigent persons to be imprisoned before adjudication of their guilt.

As the Supreme Court has made clear, a plaintiff mounting a facial challenge to a statutory

scheme has an extremely difficult burden to shoulder, at least outside the First Amendment context. *See, e.g.*, *Gonzales v. Carhart*, 127 S. Ct. 1610, 1639 (2007). As the Supreme Court explained in *United States v. Salerno*, 481 U.S. 739 (1987), a case rejecting a facial constitutional challenge to the Federal Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq*., "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists under which the Act would be valid*." *Id.* at 745 (emphasis added). As a consequence, the Court stated, the "fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Id.*

It is far from clear whether Mr. Hernandez has sued the right person to pursue his facial challenge or that he could show that there are no set of circumstances under which Connecticut's bail system could be valid. However, the Court need not address these issues because under governing Second Circuit precedent and the principles of comity reflected in the Supreme Court's landmark decision in *Younger v. Harris*, 401 U.S. 37 (1971), this Court must abstain from adjudicating Mr. Hernandez's facial constitutional claim.

In *Kaufman v. Kaye*, 466 F.3d 83 (2d Cir. 2006), the Second Circuit was faced with a § 1983 challenge to the manner in which judges were assigned for appeals in New York's Second Department of the Appellate Division. The plaintiff asserted that the procedures for such assignments violated the due process and Equal Protection provisions of the Fourteenth Amendment. The court chose to abstain from deciding the case because the relief sought "would be . . . intrusive in the administration of the New York court system." *Id*. at 86 (citing *O'Shea v. Littleton*, 414 U.S.

18

488, 500 (1974)).  As the Judge Ralph Winter, writing for the court, noted:

> In *Younger*, the Supreme Court explained that, in our federal system, a federal court,
> 'anxious though it may be to vindicate and protect federal rights and federal interests,
> always endeavors to do so in ways that will not unduly interfere with the legitimate
> activities of the States.'  *Younger* was a challenge to an ongoing criminal case, but the
> doctrine has been extended with equal force to federal civil litigation challenging
> certain other state proceedings.

*Id*. (citations omitted).

The Second Circuit in *Kaufman* expressly noted that in *Wallace v. Kern*, 481 F.2d 621 (2d

Cir. 1973), *Wallace v. Kern*, 499 F.2d 1345 (2d Cir. 1974), and *Wallace v. Kern*, 520 F.2d 400 (2d

Cir. 1975), it had "rejected a series of attempts" by federal district courts to impose new requirements

and bail procedures on the New York courts.  *Id.*

> In so holding, we wrote that under principles known as comity a federal district court
> has not power to intervene in the internal procedures of the state courts. We observed
> that the federal courts cannot legislate and engraft new procedures upon existing state
> criminal practices. *Such interference with the state criminal process in both pending
> and future bail proceedings*, would violate principles of comity established in
> *Younger*.

*Id*. at 86-87 (quotation marks and citations omitted) (emphasis added).  In *Kaufman,* Judge Winter

also observed that "[a]bstention is appropriate where the plaintiff has an opportunity to raise and

have timely decided by a competent state tribunal the constitutional claims at issue in the federal

suit."  466 F.3d at 87.

The principles articulated in *Kaufman* and *Wallace* require this Court to abstain from

reaching Mr. Hernandez's facial challenge to Connecticut's bail system.  There is no question that

the relief he seeks – forbidding state courts to impose money bail or a surety bond whenever the

defendant is indigent and monitoring the state courts to ensure that minorities are not disfavored in

the setting of bail – would intrude substantially into pending and future criminal cases in Connecticut. As the Second Circuit held in *Wallace* and reiterated in *Kaufman*, "[s]uch interference with the state criminal process in both pending and future bail proceedings, would violate principles of comity established in *Younger*." *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006); *see also Suggs v. Brannon*, 804 F.2d 274, 279 (4th Cir. 1986) (finding that claim to enjoin state bail practices was barred by *Younger* abstention).

Of course, abstention would not be appropriate if Connecticut barred effective consideration of the constitutional claims Mr. Hernandez asserts. *See Kaufman*, 466 F.3d at 87; *Bhatia v. Conway*, No. 3:06cv1334(MRK), 2006 WL 3741189, at *2 (D. Conn. Dec. 19, 2006). But that is not the case. As the Supreme Court noted long ago in *Stack v. Boyle*, 342 U.S. 1 (1951), "[t]he proper procedure for challenging bail as unlawfully fixed is by motion for reduction of bail and appeal to the Court of Appeals from an order denying such motion." *Id*. at 6. Connecticut's statutory scheme explicitly provides for this means of challenging unconstitutional bail. *See Connecticut v. Ayala*, 222 Conn. 331 (1992) (defendant challenged the revocation of his release as unconstitutional). Furthermore, Mr. Hernandez could always bring a suit for declaratory and injunctive relief and raise his facial challenges to Connecticut's bail system. What he cannot do is bypass appropriate and adequate state tribunals and ask this Court to intrude into the ongoing operation of Connecticut's criminal justice system. *See O'Shea*, 414 U.S. at 500; *Younger*, 401 U.S. at 45.

The Court emphasizes that it has made no determination regarding the merits of Mr. Hernandez's facial challenge to Connecticut's bail system and he is free to pursue both his federal and state claims in state court. In that regard, the Court notes that the Connecticut Supreme Court

has held that the bail provision of Connecticut's Constitution "is more detailed in scope and broader than that contained in the eighth amendment to the United States constitution." *Ayala*, 222 Conn. at 342 n.11.

## C. State Constitutional Claims

Having dismissed all of Mr. Hernandez's federal claims against Mr. Carbone, the Court declines to exercise supplemental jurisdiction over his state constitutional claims under 28 U.S.C. § 1367(c)(3). The Second Circuit has advised district courts that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). This case is more appropriate for declining supplemental jurisdiction than the "usual case" envisioned in *Valencia*. For this case raises novel and complex issues of first impression under Connecticut's Constitution that are singularly inappropriate for decision by a federal court. *See, e.g.*, 28 U.S.C. § 1367(c)(1) (stating that courts have discretion to decline supplemental jurisdiction when a "claim raises novel or complex issues of State law."); *O'Connor v. Nevada*, 27 F.3d 357, 363 (9th Cir. 1994) (dismissing state constitutional claims under 28 U.S.C. § 1367(c)(1)). Therefore, in the interests of judicial economy, convenience, fairness, and comity, the Court declines to exercise supplemental jurisdiction over Mr. Hernandez's claims for violation of the Connecticut Constitution.

**IV.**

For the foregoing reasons, the Court grants Mr. William Carbone's Motion to Dismiss [doc.

# 60]. The Clerk is directed to enter a judgment dismissing all claims against Mr. Carbone and to

terminate him from the case.

IT IS SO ORDERED.


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: July 29, 2008.**